SCHOTT, Judge
(concurring).
The request of plaintiff which gave rise to this dispute was an integrated request consisting of two parts, 1) that defendant provide a new point of delivery near Gal-lion, Louisiana, and 2) that there be a reduction of the load at an existing Bastrop delivery point equivalent to the amount of the load which would be carried by the new point of delivery at Gallion.
Plaintiff is entitled to arbitrate only those disputes which the parties by their contract have agreed to relegate to arbitration. The contract provides for such arbitration only “if disputes arise under the last sentence or paragraph 1.02, or the first sentence of paragraph 1.03 . . .”
1.02 and 1.03 confine themselves to the construction of new delivery points, and the question to be arbitrated is which party is to put up the money for the construction of the delivery point. If “sound engineering and economic principles” support the new point of delivery defendant puts up the money, whereas if they do not plaintiff puts it up but is repaid for its investment by defendant over a ten year period.
Had plaintiff confined its request to the first part only and had maintained that sound engineering and economic principles *990 did justify the installation without regard to the effect it might have on existing facilities at Bastrop, plaintiff would have been entitled to arbitration had defendant disagreed that such sound engineering and economic principles justified the installation. The arbitration would then have proceeded and a decision made as to who would pay the initial cost of the installation. After installation of the delivery point at Gal-lion, plaintiff might reduce the capacity at Bastrop and transfer the delivery to the Gallion point. At that stage defendant could invoke the provisions of paragraph 1.05, in effect, requiring plaintiff to pay for full capacity at Bastrop for twelve months rather than for the reduced capacity over that period. Under this scheme plaintiff would also pay for the minimum quantity agreed to for the Gallion point at the time it was constructed and for the additional demand occasioned by the transfer of capacity from Bastrop.
If defendant is ordered to .arbitrate the matter as requested, the question of whether sound engineering and economical principles dictate the installation of the new point at Gallion would become confused with the proposal to transfer capacity from Bastrop to Gallion. Defendant’s rights under paragraph 1.05 would be jeopardized in the process.
It may be that this Court could order arbitration with the prohibition included that the arbitrator is not to consider the transfer of 1,175 kilowatts from Bastrop to Gallion in making his determination as to whether sound engineering and economic principles justify the installation in Gallion, or in effect to exclude from his estimates of the load anticipated at Gallion any part of the load presently being carried at Bastrop, but this is not what plaintiff requested, and probably had good reason for requesting the new point of delivery only if the arbitrators could consider that new point getting some of its load from the existing point at Bastrop.
The contract does not entitle plaintiff to arbitration when a request is made for a new point of delivery which encompasses a reduction of a load at an existing point. The contract contemplates arbitration when a request is made for a new point of delivery without regard to its effect on existing points of delivery. Since plaintiff did not make such a request, it is not entitled to arbitration under the contract.
I respectfully disagree with my colleagues who held on the earlier appeal in this case, 324 So.2d 475, that plaintiff stated a cause of action. I would have dismissed plaintiff’s suit at that time for the reasons stated. I therefore concur with the dismissal of plaintiff’s suit at this time.